ROBERT H. SCRIBNER CA Bar #58260
MARK MILLER CA Bar #116349
KIMBLE, MacMICHAEL & UPTON
A Professional Corporation
5260 North Palm, Suite 221
Post Office Box 9489
Fresno, CA 93792-9489
Telephone: (559) 435-5500
Facsimile: (559) 435-1500

CHARLES W. SHIFLEY (Illinois Bar No. 2587564)
JUSTIN BUSCH (Illinois Bar No. 06282600)
BANNER & WITCOFF, LTD.
10 South Wacker Drive
Suite 3000
Chicago, Illinois 60606
Phone: (312) 463-5000
Facsimile: (312) 463-5001
Appearances *Pro Hac Vice*

Attorneys for Plaintiff
ESCO Corp.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ESCO CORP., an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>BERKELEY FORGE & TOOL, INC., a California Corporation,<br><br>Defendant. | Case No. CV 09-1635 SBA<br><br>**ESCO CORP.'S OPPOSITION TO BERKELEY FORGE & TOOL, INC.'S MOTION TO STAY PROCEEDINGS PENDING REEXAMINATION OF THE PATENTS-IN-SUIT**<br><br>Date: September 29,2009<br>Time: 1:00 p.m.<br>Place: Courtroom 3, Third Floor<br><br>Honorable Saundra B. Armstrong<br>United States District Judge |

## TABLE OF CONTENTS


I. Introduction .......... 5

II. Procedural and Factual Background .......... 5

III. The Law Governing Berkeley's Motion To Stay This Action .......... 7

IV. A Stay Will Not Preserve Judicial Resources and Will Not Simplify the Issues Before the Court .......... 9

V. Denial of A Stay Will Avoid Prejudice and Disadvantage to ESCO And Will Not Prejudice Berkeley .......... 11

VI. A Stay Should Be Denied Even If A Case Is In Its Initial Stages Where Reexamination Will Not Resolve All Issues In The Litigation .......... 14

VII. Conclusion .......... 15

# TABLE OF AUTHORITIES

## Cases

*Adams v. Newell Rubbermaid Inc.*,
2007 U.S. Dist. LEXIS 62512 (W.D. Wis. Aug. 21, 2007) ....................................................... 13

*Anascape Ltd. v. Microsoft Corp.*,
475 F. Supp. 2d 612 (E.D. Tex. 2007) ........................................................................................ 7

*Biax Corp. v. Fujitsu Computer Sys. Corp.*,
2007 U.S. Dist. LEXIS 12973 (E.D. Tex. Feb. 26, 2007)........................................................ 15

*Boston Sci. Corp. v. Micrus Corp.*,
2006 U.S. Dist. LEXIS 16147 (N.D. Cal. Mar. 21, 2006) ....................................................... 15

*E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
711 F. Supp. 1205 (D. Del. 1989) ............................................................................................. 15

*Ecolab, Inc. v. FMC Corp.*,
2007 U.S. Dist. LEXIS 39189 (D. Minn. May 29, 2007) ........................................................... 8

*Fresenius Med. Care Holdings v. Baxter Int'l, Inc.*,
2007 U.S. Dist. LEXIS 44107 (N.D. Cal. June 6, 2007)...................................................... 8, 14

*Graham v. John Deere Co.*,
383 U.S. 1 (1966) ........................................................................................................................ 9

*KSR Int'l Co. v. Telefex Inc.*,
550 U.S. 398 (2007) ..................................................................................................................... 9

*Polymer Tech. v. Bridwell*,
103 F.3d 970 (Fed. Cir. 1996) ................................................................................................... 13

*Purolite Int'l, Ltd. v. Rohm & Haas Co.*,
1992 U.S. Dist. LEXIS 13235 (E.D. Pa. Sept. 3, 1992)........................................................... 14

*Rohm & Haas Co. v. Brotech Corp.*,
1992 U.S. Dist. LEXIS 21721 (D. Del. July 16, 1992) ........ 15

*Texas Mp3 Techs. V. Samsung Elecs. Co.*,
2007 U.S. Dist. LEXIS 80392 (E.D. Tex. Oct. 30, 2007) ........ 15

*Tokuyama Corp. v. Vision Dynamics, LLC*,
2008 U.S. Dist. LEXIS 82732 (N.D. Cal. Oct. 2, 2008) ........ 8, 11, 15

*Viskase Corp. v. Am. Nat'l Can Co.*,
261 F.3d 1316 (Fed. Cir. 2001) ........ 14

**Statutes**

35 U.S.C. 314 ........ 12

**Other Authorities**

Manual of Patent Examining Procedure § 2661 ........ 12

## I. Introduction

Plaintiff, ESCO Corp. ("ESCO"), opposes the Motion to Stay Proceedings Pending Reexamination of the Patents-In-Suit (the "Motion to Stay"), filed by the defendant, Berkeley Forge & Tool, Inc. ("Berkeley") and respectfully requests this Court to deny the Motion to Stay. The Motion to Stay ignores that the U.S. Patent Office confirmed the validity of many claims in the reexamination of asserted U.S. Patent No. 7,171,771 ("the '771 patent"). The Motion to Stay ignores that the *inter partes* reexaminations of the patents-in-suit will likely take 5-8 years to complete (instead focusing on statistics relating to *ex parte* reexaminations) and that this extreme delay will cause great harm to ESCO, particularly with respect to ESCO's confirmed claims. The Motion to Stay ignores that Berkeley chose not to file reexamination requests on the patents-in-suit in 2007 when the patents issued and prior to commencing its infringing acts, or upon receiving notice from ESCO of Berkeley's infringement. The Motion to Stay is a tactic to delay for many years the day of reckoning for Berkeley's infringement and to give Berkeley more time to sell its infringing products, thereby gaining an economic advantage over a direct competitor in the marketplace. The Motion to Stay should be denied.

## II. Procedural and Factual Background

ESCO has been in business for nearly 100 years and is the innovation leader for metal wear parts, components and earthmoving products used in global mining, construction, dredging and other challenging industrial applications. ESCO has and makes extensive use of a full complement of research, development and testing facilities.

After ESCO introduced the inventive Torque Wedge™ Pin system, Berkeley introduced an infringing, competing lock. ESCO notified Berkeley of Berkeley's infringement of ESCO patents in the summer of 2008. After an exchange of letters, ESCO sent a letter to Berkeley on

October 7, 2008, asking Berkeley to cease making its hammerless lock. Berkeley and ESCO continued to discuss Berkeley's infringing lock and Berkeley inquired as to the possibility of a license under ESCO's patents. On November 20, 2008, ESCO sent a letter informing Berkeley that ESCO was not interested in granting a license and reiterating ESCO's request that Berkeley cease and desist the manufacture and sale of Berkeley's infringing product. After being ignored for over two months, ESCO sent another letter to Berkeley, asking whether a reply was forthcoming.

Anticipating the lawsuit, and presumably in hopes of delaying the outcome, Berkeley filed an *inter partes* request for reexamination of the '661 patent on February 3, 2009. Upon learning of the request for reexamination, ESCO received the answer it had been waiting on for months - Berkeley was going to continue infringing ESCO's patents and Berkeley did not want to resolve the dispute amicably. Therefore, in the hopes of resolving the matter much more quickly than expected through an *inter partes* reexamination, ESCO prepared and filed a complaint, initiating this lawsuit on April 14, 2009. After the lawsuit was filed, Berkeley filed an *inter partes* request for reexamination of the '771 patent on May 6, 2009. The United States Patent and Trademark Office has confirmed most of the claims of the '771 patent.

Upon receipt of the Clerk's Notice regarding a case management conference, ESCO contacted Berkeley to work toward scheduling and conducting a Rule 26 conference. Berkeley refused to cooperate, stating that Berkeley did not want discovery to begin, and instead argued for its Motion to Stay. ESCO served its Rule 26 initial disclosures; Berkeley still has not filed its Rule 26 initial disclosures. ESCO sought to conduct a Rule 26 conference; Berkeley refused. ESCO asked Berkeley to reconsider, and gave it time; Berkeley once again refused. ESCO prepared a Case Management Statement to be filed no later than the date set by this Court. Within days of the deadline set by the Clerk's Notice, Berkeley agreed to review the Case

Management Statement prepared by ESCO. Berkeley agreed to join the statement for the purpose of indicating that Berkeley did not think setting a schedule was appropriate. Berkeley still refuses to hold a Rule 26(f) conference to discuss discovery issues. While Berkeley continued to delay ESCO from moving forward with discovery, ESCO responded to the office actions in the reexamination proceedings for ESCO's two patents.

The Examiner confirmed claims 1-7 and 16-18 of the '771 patent, yet Berkeley disingenuously asserts throughout its Motion to Stay that it is likely that all claims will be canceled or amended. Rather, a stay in this action would likely only result in a lengthy reexamination process where some or all of the claims are confirmed as originally granted. Moreover, neither the scope of discovery nor the majority of disputed claim terms is likely to change significantly. This is true regardless of whether other claims are confirmed as originally granted because the issues regarding the confirmed claims encompass the majority of factual and legal issues that will be raised in this suit.

## III. The Law Governing Berkeley's Motion To Stay This Action

Courts know well that patent litigants often use reexaminations "as a tactical tool to delay a case and impose costs, with no real expectation that any controversy will be resolved." *Anascape Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 615 (E.D. Tex. 2007); *see also* Resis Decl., ¶ 6, Exh. H ("Reexamination, particularly *inter partes* reexamination is not simply used as an alternative to litigation, but an integral part of litigation strategy," at p. 6 of 11). Although the '661 Reexamination Request was filed prior to the filing of this lawsuit, it appears that Berkeley's strategy was merely to delay resolution of its infringement for as long as possible. Berkeley did not file its requests for reexamination when the patents issued; Berkeley did not file its requests for reexamination when ESCO notified Berkeley of infringement; Berkeley only filed its request for reexamination when, upon receiving ESCO's letter stating that ESCO would

assume Berkeley was choosing to willfully infringe ESCO's patents if Berkeley failed to respond, it became clear that delay was no longer an option. Now, in an apparent attempt to cause further delay, Berkeley has filed this Motion to Stay. In the meantime, Berkeley continues to affect the market by selling products that infringe ESCO's patented locking system. Berkeley has filed its Motion to Stay arguing that all claims will likely be cancelled or amended despite the fact that the U.S. Patent Office has already confirmed the validity of the majority of claims of the '771 patent in the '771 reexamination.

Berkeley's Motion to Stay is governed by several overriding principles, which collectively point towards denying the Motion to Stay.

First, a district court has no "obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze." *Fresenius Med. Care Holdings v. Baxter Int'l, Inc.*, 2007 U.S. Dist. LEXIS 44107, at **10-11 (N.D. Cal. June 6, 2007) (citation omitted).

Second, a stay cannot be granted where it would merely cause delay. *Ecolab, Inc. v. FMC Corp.*, 2007 U.S. Dist. LEXIS 39189, at *4 (D. Minn. May 29, 2007)

Third, in determining whether to stay litigation pending PTO reexamination, courts consider (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) the status of discovery and whether a trial date has been set. *Fresenius, supra.* Where a pending reexamination will not resolve all issues in the litigation, a stay should be denied even if the case is in its initial stages. *Tokuyama Corp. v. Vision Dynamics, LLC*, 2008 U.S. Dist. LEXIS 82732 (N.D. Cal. Oct. 2, 2008).

**IV. A Stay Will Not Preserve Judicial Resources and Will Not Simplify the Issues Before the Court**

Berkeley argues that "the claims of the patents-in-suit will likely be either cancelled (invalidated) or amended to be rendered more narrow." Motion to Stay, p.4, ll. 25-27. Berkeley's argument ignores the fact that, on June 24, 2009, the U.S. Patent Office confirmed the validity of claims 1-7 and 16-18 of the '771 patent. Resis Decl., ¶ 3, Exh. C. A grant of a stay pending reexamination of the '771 patent will not preserve judicial resources and simplify the issues as to these confirmed claims. Because the U.S. Patent Office has confirmed the validity of the majority of claims of the '771 patent, there is no need to stay this case and wait for a reexamination certificate that repeats confirmation of the validity of these claims.

As to the other claims of the asserted patents for which validity confirmation has not yet occurred in the pending reexaminations, Berkeley's argument ignores the strong responses filed by ESCO in those reexaminations. As shown in these responses, the cited art does not anticipate or render obvious claims 1-6, 13-20, 24, 25, 39, 40, 43, and 44 of U.S. Patent No. 7,174,661 ("the '661 patent")[1] and claims 8-15 of the '771 patent. Resis Decl., ¶¶ 3-4, Exh. D and Exh. F. The Motion to Stay ignores that, under a proper analysis under *Graham v. John Deere Co.*, 383 U.S. 1 (1966), and *KSR Int'l Co. v. Telefex Inc.*, 550 U.S. 398 (2007), many more claims will survive reexamination in addition to already confirmed claims 1-7 and 16-18 of the '771 patent. The Motion to Stay ignores objective indicia of non-obviousness, including Berkeley's copying of ESCO's claimed inventions and the great commercial success that is attributable to ESCO's claimed inventions.

The Motion to Stay cites many statistics regarding *ex parte* reexaminations but, for the most part, ignores *inter partes* reexamination statistics and the fact that many claims have

already been confirmed. For example, while 95% of all requests for *inter partes* reexamination are granted, many of those reexaminations result in at least one independent claim surviving without any claim changes. Resis Decl., ¶ 5, Exh. G.

The majority of reexaminations of utility patents in which reexamination certificates have issued were pending for an average of approximately three years and did not result in cancellation or disclaimer of all claims. Resis Decl., ¶ 5, Exh. G. As shown in Exhibit G (*see* Summary on last page of Exhibit G). Other uncompleted reexaminations have been pending for well over three years. In every reexamination that had a 1st Office Action wherein the validity of at least one originally issued independent claim was confirmed, the validity of the at least one originally issued, confirmed independent claim was confirmed again in the Reexamination Certificate; i.e., **in no instance did the PTO change its mind after confirming the validity of at least one originally issued independent claim in a 1st Office Action in an *inter partes* reexamination**. *Id.*

Based on the strong responses filed by ESCO in the reexaminations, and the fact that the U.S. Patent Office has already confirmed the validity of the majority of the claims in the reexamination of the '771 patent, it is highly likely that many, if not all, of the claims of the '661 and '771 patents will emerge unchanged from the reexamination proceedings.

Additionally, Berkeley argues that reexamination will aid the court with the benefit of the PTO's initial consideration of prior art references. However, the primary references cited in the reexaminations of the patents-in-suit are either not new references or are cumulative of references already cited. Therefore, the Court already has the benefit of the PTO's initial consideration of the primary prior art references at issue in the reexaminations.

---

[1] Claims 7-12, 21-23, 26-38, 41 and 42 of the '661 patent were not subject to reexamination. Resis Decl., ¶ 4, Exh. E.

As recognized by this Court, "a stay pending reexamination does not simplify the issues and reduce the complexity of the trial *in every* case." *Tokuyama Corp. v. Vision Dynamics, LLC*, 2008 U.S. Dist. LEXIS 82732 (N.D. Cal. 2008). To do so, the outcome of the reexamination must "finally resolve all issues in the litigation." *Id.*

Here, Berkeley has alleged a counterclaim of non-infringement of the '771 patent. As noted above, the validity of claims 1-7 and 16-18 of the '771 has been confirmed by the U.S. Patent Office in the reexamination of the '771 patent. Thus, the issues of infringement of at least claims 1-7 and 16-18 of the '771 patent, and any invalidity contentions as to those claims that Berkeley could not have raised in the reexamination, will still need to be resolved by the Court. Reexamination of claims 8-15 of the '771 patent and reexamination of claims of the '661 patent, therefore, will not add any further finality to the U.S. Patent Office's reexamination confirmation of the validity of claims 1-7 and 16-18 of the '771 patent. Moreover, the scope of discovery and disputed claim terms likely will not be significantly altered regardless of the status of the remaining claims.

In sum, because the U.S. Patent Office has already confirmed the validity of the majority of claims of the '771 patent and will likely confirm the validity of many more, if not all, of the other claims in the reexaminations, and because the scope of discovery and disputed claim terms is not likely to be altered significantly, granting a stay will <u>not</u> finally resolve all issues in the litigation.

### V. Denial of A Stay Will Avoid Prejudice and Disadvantage to ESCO And Will Not Prejudice Berkeley

Berkeley argues that a stay will not prejudice or disadvantage ESCO. As shown above, in the reexamination of the '771 patent, the U.S. Patent Office has already confirmed the validity of the majority of claims of the '771 patent. Staying ESCO's case of patent infringement,

including its case of infringement on the confirmed claims of the ‘771 patent, would prejudice and disadvantage ESCO. Given that many more, if not all, of the other claims of the ‘771 patent and the ‘661 patent likely will survive reexamination, a stay will prejudice and disadvantage ESCO as to those claims as well.

Berkeley copied and is infringing the claimed inventions of ESCO. ESCO cannot stop Berkeley from making inferior quality products as compared to ESCO’s high quality patented products. Therefore, if a stay is granted, ESCO must risk Berkeley giving the product line invented by ESCO a bad reputation, causing irreparable harm to ESCO. ESCO should be allowed to proceed without delay, in accordance with the Court’s Local Patent Rules, to a judgment of infringement and appropriate injunctive relief and damages.

Berkeley admits that the outcome of this action may be delayed by a stay. Berkeley argues, however, that any delay will be minimal. Berkeley is wrong. Indeed, it is estimated that a fully contested *inter partes* reexamination will take 5-8 years to be completed. Resis Decl., ¶ 6, Exh. H (“Despite a mandate for ‘special dispatch’, the time required to complete an *inter partes* reexamination is much longer than commonly believed”; “With an appeal, the pendancy [sic] period for *inter partes* reexams is AT LEAST 60 to 97 months (5-8 years!) . . . and that doesn’t include ‘rework’ after an appeal [of the PTO decision to the Board of Patent Appeals and Interferences once the PTO issues the Right to Appeal Notice.]”). Berkeley is correct that the pending *inter partes* reexaminations are supposed to be handled with “special dispatch.” However, this is true for **all** *inter partes* reexaminations, not just *inter partes* reexaminations of patents that are in litigation. 35 U.S.C. 314; *See also* Manual of Patent Examining Procedure § 2661. Notwithstanding the PTO’s handling of *inter partes* reexaminations with “special dispatch,” the pendency period for *inter partes* reexaminations is approximately 5-8 years. In the reexamination of the ‘661 patent, “special dispatch” does not appear to include acting on the

matter that has been "Ready for Examiner Action after Nonfinal" since June 2, 2009, according to the transaction history on the PTO's publicly accessible Patent Application Information Retrieval system.

Berkeley ignores the business prejudice that ESCO would suffer if this case were stayed for years while Berkeley continues to compete in the market with its infringing products. ESCO will suffer serious harm from having to compete with Berkeley's improper use of ESCO's patented technology, including the loss of ESCO's exclusive use of its patented technology, loss of market share, and loss of customer loyalty and goodwill.

Berkeley's argument that ESCO would not be prejudiced, presumably because ESCO can seek infringement damages years from now, has been rejected by the Federal Circuit. *Polymer Tech. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996) ("[c]ompetitors change the marketplace" such that "[y]ears after infringement has begun, it may be impossible to restore a patentee's … exclusive position by an award of damages and a permanent injunction"). Courts cannot unscramble the egg with damages because "[c]ustomers may have established relationships with infringers" and even an injunction cannot make the market what it was before infringement began. *Id.* at 976.

When a company is trying to enforce its patent rights against a competitor, prompt resolution is especially important. *See, e.g.*, *Adams v. Newell Rubbermaid Inc.*, 2007 U.S. Dist. LEXIS 62512 (W.D. Wis. Aug. 21, 2007). This is even more true for the confirmed claims 1-7 and 16-18 of the '771 patent. Here, justice delayed will be tantamount to justice denied.

Berkeley also ignores the evidentiary prejudice that ESCO would suffer from a 5-8 year delay of litigation. Much of the discovery ESCO will take in this action relates to events that took place around 2007, including initial skepticism in the industry that ESCO's innovative technology would work and Berkeley's subsequent adoption of that same technology. Delaying

discovery on these issues would prejudice ESCO because "[i]n the lengthy delay that would inevitably ensue if a stay were granted, evidence could be lost and witnesses' memories could fade." *Fresenius Med. Care Holdings v. Baxter Int'l, Inc.*, 2007 U.S. Dist. LEXIS 44107, at **10-11 (N.D. Cal. June 6, 2007) (citation omitted). Indeed, witnesses may die during a stay of 5-8 years.

Staying this action will put ESCO at a tactical disadvantage. Berkeley filed for reexamination of the '661 patent only after repeated requests by ESCO to cease infringement and after receiving a letter from ESCO stating that Berkeley's failure to respond would be understood as Berkeley choosing to willfully infringe ESCO's patents. Berkeley filed for reexamination of the '771 patent only after it was sued by ESCO. Berkeley is seeking a stay to avoid having to proceed with the case while it continues to infringe ESCO's patent claims, including claims of the '771 patent that have already been confirmed in the reexamination proceeding. Berkeley's argument that a 5-8 year stay pending reexamination of the '771 and '661 patents will not prejudice or disadvantage ESCO is incorrect.

## VI. A Stay Should Be Denied Even If A Case Is In Its Initial Stages Where Reexamination Will Not Resolve All Issues In The Litigation

As noted above, the Patent Office has already confirmed the validity of claims 1-7 and 16-18 of the '771 patent in the reexamination of the '771 patent, including their validity over Berkeley's prior art patent. There is no sound reason to stay the litigation for these confirmed claims. Where it appears that claims will likely survive reexamination, courts generally do *not* stay litigation. *See*, *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 & n.2 (Fed. Cir. 2001) (stay properly denied where the Patent Office indicated one of two families of asserted patents would survive reexamination); *Purolite Int'l, Ltd. v. Rohm & Haas Co.*, 1992 U.S. Dist. LEXIS 13235, at *5 (E.D. Pa. Sept. 3, 1992) (lifting stay when the PTO indicated some claims

would survive reexamination); *Rohm & Haas Co. v. Brotech Corp.*, 1992 U.S. Dist. LEXIS 21721, at **7, 13 (D. Del. July 16, 1992) (same); *Boston Sci. Corp. v. Micrus Corp.*, 2006 U.S. Dist. LEXIS 16147, at **3, 7 (N.D. Cal. Mar. 21, 2006) (lifting stay as to claims confirmed by the PTO).[2]

Where a pending reexamination will not resolve all issues in the litigation, a stay should be denied even if the case is in its initial stages. *Tokuyama Corp. v. Vision Dynamics, LLC*, 2008 U.S. Dist. LEXIS 82732 (N.D. Cal. Oct. 2, 2008).

That is the case here. The Patent Office has confirmed the validity of the majority of claims of the '771 patent, including their validity over Berkeley's cited prior art.

Moreover, Berkeley argues that the Court should enter a stay in this case because "no discovery has taken place." While it is true that no discovery has taken place (aside from ESCO's initial disclosures), that is merely because Berkeley has refused to have a Rule 26(f) conference to discuss discovery, thus impeding the discovery process.

## VII. Conclusion

As demonstrated above, no stay of this action is appropriate. There is no reason to stay the litigation and wait 5-8 years for completion of the reexaminations, particularly where the Patent Office has already confirmed the validity of the majority of the claims in the reexamination of the '771 patent. Berkeley's Motion to Stay should be denied.

---

[2] *See also Texas Mp3 Techs. V. Samsung Elecs. Co.*, 2007 U.S. Dist. LEXIS 80392, at *5 (E.D. Tex. Oct. 30, 2007) (refusing to stay litigation because of speculative possibility that claims would be cancelled or significantly narrowed on reexamination); *E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 711 F. Supp. 1205, 1208 (D. Del. 1989) (declining "to stay the ordinary course of its proceedings simply because the outcome of the Patent Office proceeding *may* moot the issues remanded."); *Biax Corp. v. Fujitsu Computer Sys. Corp.*, 2007 U.S. Dist. LEXIS 12973 AT *5 (E.D. Tex. Feb. 26, 2007) (denying stay in part based on fact that "some claims and issues will likely remain after the reexamination has been completed.")

Respectfully submitted,

Dated: September 8, 2009

By: /s/ Justin Busch

Robert H. Scribner
Mark Miller
KIMBLE, MACMICHAEL & UPTON

Charles W. Shifley
Justin Busch
BANNER & WITCOFF, LTD.
APPEARING *PRO HAC VICE*

Attorneys for Plaintiff
**ESCO, Corp.**

**CERTIFICATE OF SERVICE**

I certify that on September 8, 2009, I electronically filed the foregoing ESCO CORP.'S OPPOSITION TO BERKELEY FORGE & TOOL, INC.'S MOTION TO STAY PROCEEDINGS PENDING REEXAMINATION OF THE PATENTS-IN-SUIT and the DECLARATION OF PATENT ATTORNEY ROBERT H. RESIS IN SUPPORT OF ESCO CORP.'S OPPOSITION TO BERKELEY FORGE & TOOL, INC.'S MOTION TO STAY and accompanying exhibits through the Court's ECF system, which will send an electronic notice of filing to the following counsel of record who are registered ECF users:

Igor Shoiket - ISHOIKET@townsend.com.

/s/ Justin Busch

FOR ESCO CORP.