UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ESCO CORP., an Oregon corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BERKELEY FORGE & TOOL, INC., a California corporation,<br><br>Defendant. | Case No: C 09-1635 SBA<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING REEXAMINATION**<br><br>Docket 17 |

Plaintiff Esco Corporation filed the instant action alleging two claims for patent infringement against Defendant Berkeley Forge & Tool, Inc. In turn, Defendant has counterclaimed for a declaration of non-infringement and filed an *inter partes* application before the United States Patent and Trademark Office (PTO) requesting reexamination of both of the patents-in-suit. The Court has original jurisdiction over this action, pursuant to 28 U.S.C. § 1331.

The parties are presently before the Court on Defendant's Motion to Stay Proceedings Pending Reexamination of the Patents-in-Suit. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

## I. BACKGROUND

Plaintiff is the owner of U.S. Patent Nos. 7,171,771 ('771 Patent) and 7,174,661 ('661 Patent). Compl. ¶¶ 7, 14. The PTO issued the '771 Patent to inventor Terry Briscoe (Briscoe) on February 6, 2007. Id. ¶ 7. The '661 Patent was issued to Briscoe on February 13, 2007. Id. ¶ 14. Briscoe subsequently assigned his rights in both patents to Plaintiff. Id. ¶¶ 7, 14. These patents are embodied in a lock manufactured by Plaintiff known as the Torque Wedge™ Pin system.

In or about June 2008, Plaintiff notified Defendant that its competing lock, known as the Unicorn Locking System (Unicorn), infringes the patent-in-suit. Pl.'s Opp'n at 6-7; Supp. Shoiket Decl. Ex. J at 1. On November 20, 2008, after their negotiations failed, Plaintiff informed Defendant that it was not interested in licensing its patents and repeated its earlier demand to cease and desist manufacturing the Unicorn lock. Pl.'s Opp'n at 6-7. After receiving no response, in or about January 2009, Plaintiff sent Defendant another letter requesting a reply. Id. Instead of responding, Defendant submitted an *inter partes* request to the PTO on February 3, 2009 to reexamine the '661 Patent. Shoiket Decl. Ex. A.[1] On March 6, 2009, the PTO issued its First Office Action which rejected all claims for which reexamination was sought. Id. Exs. B, C.

On April 14, 2009, Plaintiff filed the instant lawsuit against Defendant alleging that it infringes the '661 and '771 Patents. Compl. ¶ 8, 15. Under the Court's initial scheduling order, the parties were to have conducted their initial disclosure conference under Federal Rule of Civil Procedure 26(f) by July 2, 2009, and to have completed their initial disclosures by July 16, 2009. Docket 2. Plaintiff attempted to schedule the Rule 26 conference, but Defendant refused. See Pl.'s Opp'n at 6; Jt. Case Mgt. Stmt. at 1-2 (Docket 21). As for the initial disclosures, Plaintiff provided disclosures to Defendant. Id. However, Defendant did not serve any disclosures on Plaintiff. Id.

On May 6, 2009, Defendant filed a request for reexamination of the '771 Patent. Shoiket Decl. Ex. D. The PTO issued a First Office Action on June 24, 2009, in which it confirmed the validity of most of the claims in the '771 Patent. Id. Exs. E, F.

---

[1] An *inter partes* proceeding allows third parties to have a role in the reexamination process, while an *ex parte* proceeding does not. See Cooper Techs. Co. v. Dudas, 536 F.3d 1330, 1332 (Fed. Cir. 2008); 35 U.S.C. § 302 (*ex parte* procedure); 35 U.S.C. § 312 (*inter partes* procedure).

|     |     |
| --- | --- |
| 1   | On July 9, 2009, Defendant filed the instant motion to stay the action pending the outcome |
| 2   | of the reexamination proceedings before the PTO.  Plaintiff has filed an opposition in which it |
| 3   | alleges, among other things, that Defendant's motion is a dilatory tactic intended to foreclose |
| 4   | Plaintiff's efforts to enforce its patent rights. |

## II. LEGAL STANDARD

"A patent is presumed to be valid, and this presumption only can be overcome by clear and convincing evidence to the contrary." Enzo Biochem, Inc. Gen-Probe Inc., 424 F.3d 1276, 1281 (Fed. Cir. 2005) (citation omitted). However, "[a]ny person at any time may file a request for reexamination by the Office of any claim of a patent on the basis of any prior art…." 35 U.S.C. § 302. A district court has the discretion to stay judicial proceedings pending reexamination of a patent. See Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); accord Amado v. Microsoft Corp., 517 F.3d 1353, 1358 (Fed. Cir. 2008).  In determining whether to grant a stay pending reexamination, courts consider: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. See Telemac Corp. v. Teledigital, Inc., 450 F. Supp. 2d 1107, 1110 (N.D. Cal. 2006); Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc., 2007 WL 1655625 at *3 (N.D. Cal. June 7, 2007).

A court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze. See NTP, Inc. v. Research In Motion, Ltd., 397 F. Supp. 2d 785, 787 (E.D. Va. 2005) (citing Viskase Corp. v. Am. Nat'l Can Co., 261 F.3d 1316, 1328 (Fed. Cir. 2001). There is no per se rule that patent cases should be stayed pending reexaminations, because such a rule "would invite parties to unilaterally derail" litigation. Soverain Software LLC v. Amazon.Com, Inc., 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).

## III. DISCUSSION

### A. STAGE OF THE LITIGATION

There is no dispute between the parties that this case is in its embryonic stage. The complaint was filed in April 2009. No discovery has been taken and no trial date or other pretrial deadlines have been established. Plaintiff acknowledges as much but counters that the Rule 26 conference has not transpired because Defendant has refused to participate in that process. Pl.'s Opp'n at 15. However, Defendant's failure to comply with the Court's initial order, while troubling, does not alter the fact that the requested stay is being sought early in the litigation when no substantive proceedings have taken place and no deadlines have been scheduled. Thus, the Court finds that the first factor militates in favor of a stay. See Yodlee, Inc. v. Ablaise Ltd., 2009 WL 112857 *4 (N.D. Cal. Jan. 16, 2009).

### B. SIMPLIFICATION OF THE ISSUES AND TRIAL

The second factor examines whether a stay will simplify the issues in question and trial of the case. As this Court has previously observed, "[t]o truly simplify the issues … *the outcome of the reexamination must finally resolve all issues in the litigation*." Yodlee, 2009 WL 112857 *5 (citation and internal quotations omitted, emphasis added); see also Tokuyama Corp. v. Vision Dynamics, LLC, 2008 WL 4452118 (N.D. Cal. Oct. 8, 2008) (denying motion for stay solely on the ground that the reexamination would not resolve all issues in the case).

Defendant argues that the PTO's First Office Orders show that the patents-in-suit "will likely be cancelled (invalidated) or amended to be more narrow." Id. The Court is not so sanguine. While it is true that the PTO has initially rejected all claims in the '661 Patent for which reexamination was sought, see Shoiket Decl. Exs. B, C, the PTO has confirmed the validity of the majority of claims in the '771 Patent, id. Ex. F at 2. Attempting to downplay the significance of that determination, Defendant asserts that the claims in the '771 Patent are unlikely to play a central role in the litigation. Def.'s Reply at 7-8. Setting aside its failure to raise this argument in its moving papers, Defendant provides no support for this supposition other than the self-serving statements of its counsel in a letter sent to opposing counsel. Supp. Shoiket Decl. Ex. J.[2] As such,

---

[2] This argument also was improperly presented for the first time in Defendant's reply.

- 4 -

it is likely that issues will remain for the Court's determination upon completion of the reexamination process.

Moreover, statistical data from the PTO also casts doubt on whether reexamination will finally resolve all issues in the litigation. Defendant points to Filing Data from the PTO regarding *Inter Partes* patent reexaminations from November 29, 1999 to March 31, 2009 which shows that of the claims that are reexamined, the PTO cancelled all claims in approximately 73% of reexaminations. Shoiket Decl. Ex. H. However, more current data from the PTO reveals that the percentage of reexaminations resulting in the complete cancellation of all claims has fallen precipitously to 42% (compared to 73% as claimed by Defendant). See Pl.'s Opp'n at 10; Resis Decl. ¶ 10 Ex. G at 33. Though the statistical information presented suggests that reexamination may, at least, change the landscape as to *some* claims, the Court is not convinced that reexamination necessarily will resolve *all* of the claims in dispute. Given the fact that the average time for completing the reexamination process exceeds *three years*, coupled with the possibility that at least some claims may have to be litigated notwithstanding reexamination, the Court concludes that the second factor weighs against a stay.[3]

### C. PREJUDICE AND TACTICAL CONCERNS

The third factor examines whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. Plaintiff argues that it will be prejudiced by a stay because it will allow Defendant to continue manufacturing its allegedly inferior products and thereby damage Plaintiff's reputation. Plaintiff also complains that the reexamination process could take years to complete, and that the intervening delay will prejudice its ability to prepare its case due to the fading memories of witnesses and the loss of evidence. Pl.'s Opp'n at 13-14. However, the prejudice claimed by Plaintiff applies equally to any case where reexamination is sought. It is for

---

[3] It is axiomatic that the greater the delay, the greater the risk of prejudice. See TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 701 (9th Cir. 2001). Current information from the PTO shows that the average *inter partes* reexamination taking 37.4 months to complete. Resis Decl. Ex. G. In addition, it appears that such delay is increasing. The Federal Circuit recently noted that "the number of reexamination requests is increasing, as is the time for completion of reexamination and appeal in the PTO, as well as the right of judicial review…. The pendency of *inter partes* reexamination is reported to average 41.7 months." Fresenius USA, Inc. v. Baxter Int'l., Inc., – F.3d –, 2009 WL 2881629 at *15 (Sept. 10, 2009) (Newman, J., concurring).

that reason that courts have found that "delay inherent in the reexamination process does not constitute, by itself, undue prejudice." SKF Condition Monitoring, Inc. v. SAT Corp., 2008 WL 706851 at * 6 (S.D. Cal. Feb. 27, 2008); accord Tokuyama Corp., 2008 WL 4452118 at *4.

The above notwithstanding, the record lends credence to Plaintiff's assertion that Defendant is attempting to use the reexamination process in order to gain a tactical advantage in the litigation. Plaintiff contends—*and Defendant does not dispute*—that Defendant commenced the reexamination process as to the '661 Patent in anticipation of Plaintiff's filing suit following their unsuccessful negotiations. See Pl.'s Opp'n at 6-7. Although Defendant has been aware of Plaintiff's infringement accusations since at least June 2008, it made no effort to seek reexamination of the patents-in-suit until it became apparent that Plaintiff was unwilling to license its patents and that litigation was inevitable. In addition, Defendant waited until three months after the action was commenced, and after the PTO issued its First Office Actions, before filing its motion for stay.

The Court is also concerned by Defendant's unilateral decision to preempt this process and impede Plaintiff's efforts to enforce its patents by ignoring its obligations under Rule 26 and failing to comply with the Court's initial order. Defendant's failure to comply with the initial scheduling order and its Rule 26 obligations without seeking relief from the Court to be excused from such requirements suggests that Defendant is attempting to use the reexamination process to derail Plaintiff's efforts to prosecute its patent infringement claims. Given the record presented, which the Defendant does not refute, the Court finds that the third factor weighs in favor of denying the requested stay.

## IV. CONCLUSION

On balance, the relevant factors counsel the Court to exercise its discretion against imposing a stay of the proceedings pending reexamination of the patents-in-suit.

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Defendant's Motion to Stay Proceedings Pending Reexamination of the Patents-in-Suit is DENIED.

|   |   |
|---|---|
| 1 | 2.    The hearing on the motion and Case Management Conference (CMC) scheduled for September 29, 2009 is VACATED. |
| 3 | 3.    The CMC previously scheduled for September 29, 2009 is CONTINUED to **October 15, 2009 at 2:30 p.m.** The parties shall **meet and confer** prior to the conference and shall prepare a joint *updated* CMC Statement which shall be filed no later than ten (10) days prior to the CMC that complies with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court. Plaintiff shall be responsible for filing the statement as well as for arranging the conference call. All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time. |

2. The hearing on the motion and Case Management Conference (CMC) scheduled for September 29, 2009 is VACATED.

3. The CMC previously scheduled for September 29, 2009 is CONTINUED to **October 15, 2009 at 2:30 p.m.** The parties shall **meet and confer** prior to the conference and shall prepare a joint *updated* CMC Statement which shall be filed no later than ten (10) days prior to the CMC that complies with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court. Plaintiff shall be responsible for filing the statement as well as for arranging the conference call. All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

4. This Order terminates Docket 17.

IT IS SO ORDERED.

Dated: September 28, 2009

SAUNDRA BROWN ARMSTRONG
United States District Judge